IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMY J. H., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-4364 |
| v. | ) | |
| | ) | Magistrate Judge Jeannice W. Appenteng |
| MICHELLE KING, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Amy J. H. seeks to overturn the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and plaintiff filed a brief explaining why the Commissioner's decision should be reversed and the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After review of the record and the parties' respective arguments, the Court grants the Commissioner's motion.

## BACKGROUND

Plaintiff protectively applied for DIB on July 2, 2013 alleging disability since February 16, 2009 due to migraine headaches, anxiety, depression, stress, and recovery from drug addiction. Administrative Record ("R.") 153-54, 174. Born in

---

[1] Michelle King became the Acting Commissioner of Social Security on January 20, 2025. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

November 1974, plaintiff was 34 years old as of the alleged onset date, and 39 years old as of her September 30, 2014 date last insured ("DLI"), making her at all times a younger person (under age 50). 20 C.F.R. § 404.1563(c). She has a master's degree in industrial and organizational psychology, with specialized training in assessment testing, and worked sporadically as an academic advisor, division manager, lead counselor, and consultant. R. 52-53, 176. Plaintiff quit working in February 2009 due to her conditions and has not engaged in substantial gainful activity since that date. R. 53.

The Social Security Administration denied plaintiff's application at all levels of review and she filed a timely appeal with the district court. R. 694-704. On May 10, 2019, the court remanded the case for further proceedings, with instructions to: consider the full scope of treating psychiatrist Jonathan Gamze, M.D.'s opinions and obtain legible copies or clarification of his treatment notes, reassess plaintiff's residual functional capacity ("RFC") based on an evaluation of the complete medical records, and properly account for plaintiff's limitations in concentration, persistence, or pace. R. 448-64. *See also Amy H. v. Berryhill*, No. 17 C 4559, 2019 WL 2076325 (N.D. Ill. May 10, 2019). On August 27, 2019, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an administrative law judge (the "ALJ") to take further action needed to complete the administrative record and issue a new decision. R. 468.

The ALJ held a supplemental hearing on February 11, 2020 and heard testimony from plaintiff, who was represented by counsel, and from vocational

2

expert ("VE") Richard Fisher. R. 376-414. On April 29, 2020, the ALJ determined that plaintiff's persistent depressive disorder and generalized anxiety disorder are severe impairments, but that they do not alone or in combination with plaintiff's non-severe impairments, including migraine headaches, meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 353-59.

After reviewing the evidence, the ALJ concluded that prior to the September 30, 2014 DLI, plaintiff had the RFC to perform a full range of work at all exertional levels with various non-exertional limitations. R. 359-67. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could not perform plaintiff's past work but could perform a significant number of other jobs available in the national economy. R. 367-68. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through the September 30, 2014 DLI. R. 369. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, plaintiff argues that the ALJ: (1) failed to account for the limiting effects of her migraine headaches in assessing the RFC; (2) erred in weighing the opinion from treating psychiatrist Dr. Gamze; and (3) did not properly accommodate her moderate limitations in

3

concentration, persistence, or pace.[2] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

### A. Standard of Review

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id*.

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its]

---

[2] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**B.  Analysis**

    **1.  Migraine Headaches and Opinion Evidence**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in evaluating her migraine headaches. Dkt. 13 at 8-12; Dkt. 19 at 3. In her opening brief, plaintiff challenges the ALJ's conclusion that the migraine impairment is not severe. Dkt. 13 at 11-12. As Plaintiff acknowledges, however, "[t]he Step 2 determination is 'a *de minimis* screening for groundless claims.'" *Id*. at 9 (quoting *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016)). "As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process," making any error of omission at

Step 2 harmless. *Esther V. v. Saul*, No. 19 C 8093, 2021 WL 1121123, at *4 (N.D. Ill. Mar. 24, 2021) (quoting *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010)). *See also Dorothy B. v. Berryhill*, No. 18 C 50017, 2019 WL 2325998, at *2 (N.D. Ill. May 31, 2019) ("[A]ny error at step two is harmless if the ALJ finds a claimant has *any* severe impairment and goes on to sufficiently address the aggregate effect of all the claimant's severe and non-severe impairments later in his analysis") (emphasis in original) (citations omitted). Here, the ALJ found that plaintiff suffers from several severe impairments and so proceeded through the next sequential steps. R. 353-69. In such circumstances, any error the ALJ may have made at Step 2 was at most harmless and does not support remanding the case.

Plaintiff argues that even if the migraines are non-severe, the ALJ still needed to consider them in determining her RFC. The ALJ did exactly that in a thorough discussion of the medical and testimonial evidence of record. R. 354-56, 359-67. A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 C 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ acknowledged that plaintiff consistently reported migraine headaches starting well before the February 2009 alleged disability onset date. R.

6

554. The ALJ also noted plaintiff's testimony from the February 26, 2016 and February 11, 2020 administrative hearings that, prior to the September 30, 2014 DLI, she experienced three to four migraines each month. R. 64, 354, 394. These migraines caused nausea, flushing, sweating, and cold sweats, which plaintiff treated with over-the-counter Excedrin, a cold compress, and rest. *Id*. The ALJ found it significant, however, that plaintiff told consultative examiners in September 2013 that since she stopped working in 2009, she only experienced a headache once every other month, primarily associated with menses. R. 280, 286, 354. As the Commissioner fairly observes, this "directly contradicts [plaintiff's] current assertion that, 'there is no dispute that [her migraines] persisted (unabated) throughout the relevant period." Dkt. 17 at 4 (quoting Dkt. 13 at 8).

Looking to plaintiff's treatment, the ALJ cited her testimony that between 2006 and 2016, the only provider she saw for headache care was her psychiatrist Dr. Gamze. R. 64-65, 354, 361. He opined on February 25, 2016 and January 21, 2020 that plaintiff would be off-task at least 25% of the time and absent from work several days per month due to her migraines. Dkt. 13 at 12, 15; R. 333, 1004. Plaintiff insists that the ALJ should have given great or controlling weight to these opinions because Dr. Gamze was a treating source who had been caring for her since 2007. Dkt. 13 at 12, 15; Dkt. 19 at 4; R. 333, 1004.

Plaintiff is correct that under the rules in effect when she filed her claim, a treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

7

inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). If the opinion is contradicted by other evidence or is internally inconsistent, the ALJ may discount it so long as she provides an adequate explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). That is to say, the ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6); *see Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009).

The ALJ acknowledged that Dr. Gamze is plaintiff's long-time mental health treater. R. 354, 361. But the ALJ also noted that according to Dr. Gamze, he never treated plaintiff for headaches, even though plaintiff told him this was her primary impairment. R. 361, 367, 595 ("I'm not treating her for headaches").[3] In fact, Dr. Gamze had to schedule a specific appointment in February 2020 to obtain a detailed

---

[3] As instructed by the District Court, the ALJ spoke with Dr. Gamze on March 21, 2020 to obtain clarification as to the contents of his handwritten treatment notes and the conclusions set forth in his February 25, 2016 opinion. R. 595-96.

8

history of plaintiff's migraines. R. 354, 595. Moreover, Dr. Gamze stated that he and plaintiff completed the February 2016 RFC form together "and this is what she told me . . . Everything on this form is from her." R. 361, 596. The ALJ noted Dr. Gamze's observation that he felt plaintiff was forthcoming and honest about her experiences, but reasonably concluded that an opinion based entirely on plaintiff's subjective reports was not persuasive. R. 361. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("[I]f the treating physician's opinion is . . . based solely on the patient's subjective complaints, the ALJ may discount it").

Contrary to plaintiff's assertion, moreover, the ALJ expressly accounted for her migraines in the RFC. The ALJ noted that changes in plaintiff's routine caused stress, which led to migraines. R. 220, 355. Plaintiff found her prior job very stressful, as it required her to place cold calls to strangers to sell a product, meet production demands, and drive to unfamiliar places. R. 360, 363, 389-90. Once she quit that job, her stress and headaches decreased. R. 355, 361. According to the consultative examiner, as of September 2013 plaintiff "seemed able to manage work involved [in] running a household with less stress than she was able to manage her job." R. 364 (citing R. 282). Recognizing that plaintiff's headaches are triggered by stress, the ALJ limited her to a work environment with minimal stressful situations: simple, routine, and repetitive work involving few, if any, workplace changes, no fast-paced production requirements, simple decision-making, and only occasional social interactions with no close supervision such as hourly monitoring. R. 359.

9

Plaintiff denies that these limitations adequately address her migraines, insisting that "the only logical conclusion" that can be drawn from her improvement after quitting her job is that full-time work of any kind triggered disabling migraines. Dkt. 13 at 9. In essence, this amounts to a request that the Court reweigh the evidence, which it will not do. *See Milhem v. Kijakazi*, 52 F.4th 688, 694 (7th Cir. 2022) ("This court does not substitute its judgment for that of the ALJ, reweigh the evidence, or decide questions of credibility"). Notably, plaintiff states in her reply brief that she does not contend that migraines "in and of themselves, impose work-related functional loss" but believes that the combined impact of her headaches and other impairments "result in work-preclusive limitations." Dkt. 19 at 3. Plaintiff provides no supporting discussion or analysis related to this assertion and so has waived the argument. *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority").

Also unavailing is plaintiff's objection that the ALJ improperly relied on mere "snapshots" of the medical record when he pointed out that she routinely denied having migraines between 2017 and 2019. Dkt. 13 at 11, 14. In citing this evidence, the ALJ acknowledged that the denials may have reflected only that plaintiff did not have a headache on the day of the visits. R. 355 (citing R. 622, 701, 710, 717, 727, 732, 742, 747, 757, 762, 767, 772, 777, 782, 793, 799, 805, 817, 822, 829, 835, 842, 863, 870, 882, 889). Regardless, the fact that plaintiff consistently reported no

10

headaches during appointments that post-date the DLI by more than two years undermines plaintiff's complaints of continuous, disabling migraines since 2009. And since plaintiff does not cite any treatment notes documenting greater limitations prior to the DLI, there is no merit to her suggestion that the ALJ ignored evidence favorable to her claim. *Compare Gerstner v. Berryhill*, 879 F.3d 257, 261-62 (7th Cir. 2018) (ALJ erred by selectively discussing "portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability").

Plaintiff's remaining arguments are largely undeveloped and unpersuasive in any event. For example, plaintiff faults the ALJ for affording significant weight to the opinions from the state agency reviewers that her migraines are not severe. Dkt. 13 at 11. As noted, however, the step two determination is *de minimis* and not a basis for remand in this case. *See supra* at 5-6. Plaintiff also stresses that "[e]very evaluating source in the record noted a diagnosis of migraine headaches." Dkt. 13 at 11. Being diagnosed with an impairment, however, "does not mean [it] imposed particular restrictions on [plaintiff's] ability to work. . . . It was [plaintiff]'s burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. Appx. 574, 578-79 (7th Cir. 2018). Plaintiff has failed to make such a showing here.

Finally, plaintiff states in conclusory fashion that the ALJ was not allowed to discount her subjective statements based solely on objective evidence, or find her

11

capable of working because her migraines had improved. Dkt. 13 at 10. The ALJ did no such thing. The ALJ provided several valid reasons for rejecting plaintiff's complaints of disabling migraines, including their inconsistency with objective evidence showing improvement, her reports of daily activities, her use of only over-the-counter medication, and her lack of specialized migraine treatment. R. 356-65. Plaintiff offers nothing to demonstrate that this decision was patently wrong. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) ("As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong"); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support").

Viewing the record as a whole, the ALJ did not commit reversible error in assessing plaintiff's migraine headaches and reasonably accounted for them in the RFC. "Although plaintiff may disagree with how the ALJ weighed the evidence and the conclusions the ALJ drew from that evidence, this Court does 'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's.'" *Bridget T. M. v. O'Malley*, No. 21 C 50290, 2024 WL 4347193, at *2 (N.D. Ill. Sept. 30, 2024) (quoting *Gedatus*, 994 F.3d at 900). Plaintiff's request to remand the case for further consideration of her migraine headaches is denied.

### 2. Concentration, Persistence, or Pace

Plaintiff argues that the case still requires remand because the RFC confining her to routine tasks with limited social interaction does not adequately capture her moderate limitations in CPP. Dkt. 13 at 13-14; Dkt. 19 at 4 (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619-20 (7th Cir. 2010)). The Court disagrees. The ALJ fairly concluded that plaintiff's issues with concentration and attention, like her migraines, stem from "stress and/or pressure." R. 358. She struggles with changes in routine, calling strangers, meeting production demands, and driving to unfamiliar places. R. 220, 355, 360, 363, 389-90. To reduce these "clear triggers," the ALJ limited plaintiff to simple, routine, repetitive work involving few, if any, workplace changes, no fast-paced production requirements, simple work-related decisions, occasional interaction with the general public, co-workers, and supervisors, and no close supervision such as hourly monitoring. R. 359, 362-63. This RFC ties specific restrictions to plaintiff's unique mental deficits and so builds a logical bridge from the evidence to the ALJ's conclusion. R. 366. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (RFC for routine tasks and limited social interactions adequately accommodated moderate deficits in CPP); *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (no error where the ALJ "tailored Martin's RFC to her CPP limitations without assuming that restricting her to unskilled work would account for her mental health impairments").

The only physician of record who imposed greater restrictions was Dr. Gamze. In his February 2016 RFC, Dr. Gamze indicated that plaintiff would be off-

13

task more than 30% of a workday and absent more than six days per month. R. 333. But as noted, the ALJ reasonably rejected this opinion since Dr. Gamze completed the form together with plaintiff who supplied all of the answers and limitations herself. R. 365, 367, 595-96. The extreme restrictions are not supported with citations to specific treatment notes and are inconsistent with the largely unremarkable findings from consultative examinations performed in 2013 and 2014, which documented normal attention and concentration, logical thought process, good fund of knowledge, good judgment and problem solving, good abstract reasoning, and normal affect. R. 281-82, 287, 310, 363-64, 367. Notably, the state agency reviewers agreed that prior to the DLI, plaintiff was "mentally capable of working in a low stress work setting where close supervision is not required." R. 86, 97.

Viewing the record as a whole, the ALJ's RFC determination adequately accounted for plaintiff's moderate limitations in CPP, and that finding is supported by substantial evidence. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (courts "apply a very deferential standard of review to the ALJ's decision"); *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (substantial evidence is "not a high threshold"). Plaintiff's request to remand the case for further consideration of this issue is denied.

## **CONCLUSION**

For the reasons stated above, plaintiff's motion to remand the case [13] is denied, and the Commissioner's motion for summary judgment [16] is

granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 2/13/2025